# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

ELIZABETH A. ERICKSON,

   Plaintiff,

  v.            Case No. 15cv320

STATE OF WISCONSIN,
MICHAEL GRECO, in his Official Capacity,
STEVE LAESCH, in his Official Capacity,
JOHN HAUGH, in his Official Capacity, and
PATRICIA NOLAND, in her Official Capacity,

   Defendants.

## COMPLAINT

Plaintiff Elizabeth A. Erickson (hereinafter, "Ms. Erickson,") by Cullen Weston Pines & Bach LLP, her attorneys, alleges as her Complaint as follows:

### INTRODUCTION

1.  This action is a claim for equitable relief, including declaratory and injunctive relief brought to correct prohibited discrimination on the basis of disability, protected by the Rehabilitation Act of 1973 (hereinafter, "§ 504"), 29 U.S.C. § 794 *et seq.;* the Americans with Disabilities Act, as Amended by the ADA Amendments Act of 2008 (together, the "ADAAA"), 42 U.S.C. § 12101, *et seq.;* and 42 U.S.C. § 1983.

2.  It is also a claim for intentional discrimination on the basis of disability against the State of Wisconsin, for equitable relief, accrual of back pay, reinstatement, or any additional relief available under the remedy portions of § 504.

## JURISDICTION & VENUE

1. This Court has original jurisdiction over Ms. Erickson's claim pursuant to 28 U.S.C. § 1331 in that her cause of action arises under the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.;* substantive provisions of the ADAAA, 42 U.S.C. § 12101, *et seq.;* and 42 U.S.C. § 1983.

2. Ms. Erickson has complied with all jurisdictional prerequisites under the applicable sections of the ADAAA. In particular, Ms. Erickson filed a charge of discrimination with the State of Wisconsin Department of Workforce Development, Equal Rights Division on April 17, 2013, within 300 days of the actions complained of.

3. Venue in this Court is appropriate pursuant to 42 U. S. C. § 2000e-5(f)(3), 42 U.S.C. § 12117(a), and 28 U. S. C. § 1391, because the employment practices involved in Ms. Erickson's claims occurred primarily in Rhinelander, Wisconsin or elsewhere in the Western District of Wisconsin.

4. On or about March 3, 2015, the U.S. Equal Employment Opportunities Commission issued Ms. Erickson a Notice of Right to Sue the State of Wisconsin in the United States District Court. A copy of the Notice of Right to Sue is attached hereto and incorporated herein by reference as Exhibit A.

5. Ms. Erickson received the Notice of Right to Sue on March 5, 2015, and has filed suit within 90 days of her receipt of the Notice of Right to Sue.

## PARTIES

6. Plaintiff Ms. Erickson is an adult citizen of the State of Wisconsin whose address is W10136 Dakota Ave., Wautoma, WI 54982.

2

7.      Defendants Michael Greco, Steve Laesch, John Haugh, and Patricia Noland, each served as an official of the State of Wisconsin assigned to the Department of Workforce Development, Division of Vocational Rehabilitation (hereinafter "Wisconsin DWD-DVR") during the period relevant to this lawsuit.   Each directly or indirectly supervised, administered, or managed Ms. Erickson's work on behalf of the Wisconsin DWD-DVR.  Each of them had effective input into decisions of whether to hire her, retain her; each supervised and/or evaluated her; each participated in decisions such as whether and what disability accommodation to provide to her and when, and the decision to terminate her employment, all under color of state law.  Each of them is being sued in an official capacity under 42 U.S. C. sec. 1983 for equitable relief.

## FACTS RELEVANT TO ERICKSON'S CLAIM

8.      The State of Wisconsin, as hereinafter described, is and was at all relevant times, a recipient of federal financial assistance as that term is defined in 42 U.S.C. §§ 2000d – 2000d-7. Because of its acceptance of such funds by the State of Wisconsin DWD-DVR, the State of Wisconsin is not immune from suit pursuant to 42 U.S.C. §§ 2000d – 2000d-7.

9.      Ms. Erickson is an individual with disabilities: she has deafness in her right ear since early childhood as a result of a cholesteatoma. She also has been diagnosed as having a weakness in her auditory working memory which affects her ability to understand and process information.

10.     Ms. Erickson's date of birth is September 29, 1964. She was age 48 when she was terminated from her employment as a Counselor-in-Training with Wisconsin DWD-DVR.

11.     Defendant Wisconsin DWD-DVR is the agency of the State of Wisconsin whose purpose it is to assist persons with disabilities to obtain, maintain, and advance in employment.  It operates a central administrative office in Madison, WI.  At all times relevant to this litigation, it employed Ms. Erickson as a Vocational Rehabilitation Counselor-in-Training.

12.     Wisconsin DWD-DVR receives the largest portion of its Vocational Rehabilitation funding from the federal government: 74.36%, or $63,440,207 of its operating expenses came from federal funding sources in Federal Fiscal year 2014.   It is a federal funding recipient as § 504 defines that term.

13.     Due to her disabilities, Ms. Erickson was a client of Wisconsin DWD-DVR services from approximately 2002 until she became an employee of Wisconsin DWD-DVR in 2010. While she was a client of Wisconsin DWD-DVR, she listed becoming a counselor as an employment goal.

14.     In November 2010, Wisconsin DWD-DVR selected Ms. Erickson, who for a short time remained a client as well as becoming an employee, for a project position at the Wisconsin DWD-DVR in which she received a temporary license and could experience the work of a vocational rehabilitation counselor.

15.      In 2010-2011, while in the project position, Ms. Erickson worked in Rock County, usually in Janesville, WI. The project position ended in August 2011.

4

16.     Ms. Erickson was then selected to continue as an employee of the Wisconsin DWD-DVR for a permanent position as a Vocational Rehabilitation Counselor-in-Training beginning in mid-August, 2011.

17.     In about March 2012, Ms. Erickson was "closed" successfully as a DVR client, a status indicating that she successfully had achieved and transitioned to permanent employment.

18.     The Counselor-in-Training position was licensed for four (4) years. Ms. Erickson completed about 19 months in that four-year period, until the Wisconsin DWD-DVR terminated her for alleged failure to meet job performance standards on February 2013.

19.     While in the Counselor-in-Training permanent position, Ms. Erickson worked primarily out of the Wisconsin DWD-DVR office in Rhinelander, WI. At all times relevant to her claim, Ms. Erickson worked in counties within the Western District of Wisconsin, and her supervisors at the Wisconsin DWD-DVR worked out of Wausau, Wisconsin Rapids, and Madison, all within the Western District of Wisconsin.

20.     Defendant Wisconsin DWD-DVR has known of Ms. Erickson's status as an employee with a disability since at least 2002, because she was a client with the agency on account of her right ear hearing loss. She wears a hearing aid to partially compensate for the loss of hearing in her right ear.

21.     In November 2010, Ms. Erickson began a project position in the job of a Vocational Rehabilitation Counselor-in-training working out of the DWD-DVR office in

5

Janesville, WI.  She obtained a LPC-IT four-year training license from the then-Wisconsin Department of Regulation and Licensing in order to undertake her duties.

22.     In November 2010, Ms. Erickson completed a disability self-identification and accommodation survey for the Wisconsin DWD-DVR during and related to her project position.

23.     In June 2011, Suzanne Lee, then-Wisconsin DWD-DVR Workforce Development Area ("WDA") Director for the Southwest Area, wrote a "To Whom it May Concern" letter describing Ms. Erickson's positive accomplishments as a project DVR Counselor- in-Training for the first seven months in the Janesville, WI office. Ms. Lee wrote about Ms. Erickson, "In my opinion, she has demonstrated the potential for a long and successful career as a Vocational Rehabilitation Counselor and would be an asset to any team."

24.     Ms. Lee also provided a positive Goals and Accomplishments Review ("GAR") report for the first six months of Ms. Erickson's project service. Ms. Lee passed Ms. Erickson from her probationary status at six months. In about July 2011, Ms. Erickson was notified that the project position would be cut by the DVR on or about August 26, 2011.

25.     Ms. Erickson then sought, and Wisconsin DWD-DVR selected her for, a DVR Counselor-in-Training permanent position assigned to the Rhinelander, Wisconsin DWD-DVR office, beginning on August 15, 2011.  Her new one-year probationary period began on August 15, 2011 under WDA-6 Director Kim Pomeroy. Ms. Erickson worked until August 12, 2011 in Janesville, Wisconsin.

26.     In October 2011, Ms. Pomeroy e-mailed her work group to announce that she had accepted a section chief position with Wisconsin DWD-DVR effective November 11, 2011. She provided Ms. Erickson and other employees who had been under her supervision with their GAR forms; however, Ms. Pomeroy never provided an evaluation to Ms. Erickson.

27.     Ms. Erickson received a new first-line supervisor, VR Supervisor Richard Clark ("Mr. Clark"). Mr. Clark was overseen by a WDA Director in La Crosse, Amy Grotzke, who never had any direct contact with Ms. Erickson. In February 2012, a new direct supervisor, Patricia Noland ("Ms. Noland"), Director of WDA # 6 in Wisconsin DWD-DVR also began working with Ms. Erickson. Director Noland did not assume first-line supervision of Ms. Erickson, as Mr. Clark had retained both direct and clinical supervision since Ms. Pomeroy's departure.

28.     On July 18, 2012, Ms. Erickson received a GAR from Mr. Clark indicating that he ranked her as having "met standards" in 23 of 25 areas; one area needed improvement and one area was unmet, in his assessment. Ms. Erickson filed a rebuttal on August 7, 2012 regarding these two. Mr. Clark's prior two evaluations of her at 3 months and 6 months had no negatives.

29.      On or about July 26, 2012, despite his written assessment of Ms. Erickson, Mr. Clark sent an e-mail to Wisconsin DWD-DVR managers Steve Laesch ("Mr. Laesch,"), Employment Relations Program Chief, Human Resource Services Bureau, Administrative Services Division, Wisconsin DWD, and to Ms. Noland, stating that Ms. Erickson was nearing the end of her Probationary Period and DVR was desiring to not

pass her.  He asked to talk to them before he met with Ms. Erickson a second time on
July 31, 2012.

30.      On July 31, 2012, Mr. Clark e-mailed Mr. Laesch and Ms. Noland to say
that he had met with Ms. Erickson that morning. Ms. Noland participated by conference
call. Ms. Noland and Mr. Clark talked after the call and agreed to recommend that Ms.
Erickson's Probation be ended unsuccessfully. Mr. Clark stated to Mr. Laesch and Ms.
Noland that he had not gone through this process for many years and might need their
insight. He asked Mr. Laesch and Ms. Noland what they needed from him before they
sent the letter ending Ms. Erickson's probation unsuccessfully to Wisconsin DWD-DVR
Director Michael Greco ("Mr. Greco").

31.      On or about August 7, 2012, Ms. Erickson met with Ms. Noland for over
three hours. Ms. Erickson rebutted the accuracy of Mr. Clark's allegations. Ms. Erickson
told Ms. Noland of her hearing disability and that she had a Disability Expanded
Certification on file in Madison. Ms. Erickson told Ms. Noland that her disability
entitled her to up to one year of additional training. Ms. Erickson asked to be provided
with additional training.

32.      Ms. Noland included in her summary of the August 7 meeting that, "I
believe that Elizabeth brings up some good points in her arguments. Namely, her
previous GARS stated (for the most part) that her evals have met standard."

33.      Ms. Noland claimed incorrectly during their August 7 conversation that
Ms. Erickson had never asked for a disability accommodation, and said no one knew of
her hearing disability. But Ms. Erickson asserted that she had interviewed with Mr.

8

Clark before receiving the job in Rhinelander; she had told him of her hearing disability and was not given a position. However, she had been hired for the project position at Janesville at the first interview.

34.    Mr. Clark would not discuss a correction in Ms. Erickson's employment record, even though she was meeting the requirements of the position.

35.    Ms. Erickson told Ms. Noland on August 7, 2012 that Mr. Clark was discriminating against her on the basis of her disability and was holding her to a higher standard than that of other employees.

36.    On August 10, 2012, DWD extended Ms. Erickson's probationary period by 215 hours due to absences from work during her probationary period. This extended her probationary period from August 14, 2012 to September 20, 2012.

37.    Ms. Erickson's absences had consisted of approved absences that the employer counted as follows: 46.75 hours of sick leave, 63.75 hours of vacation, 97.25 hours of legal and personal holidays, and 8 hours for a death.  In addition to this, Ms. Erickson had one remaining full week of leave time accrued for carry over.

38.    Wisconsin Admin Code Chapter ER-MRS § 13.05(1) provided that if the probationary employee had absences from employment totaling more than 174 work hours or the prorated portion for part time employees, the probationary period shall be extended by the length of time absent, except that up to 174 work hours or prorated portion for part-time employees may be waived by the appointing authority. DWD Policy # 450 contained similar language: If an employee had absences during probation for any reason exceeding 174 work hours, the probationary period must be extended by

9

the length of time absent. Thus, the extension of 215 hours for Ms. Erickson was required.

39.     On August 22, 2012, and on August 29, 2012, Ms. Erickson received calendar scheduling entries canceling her face-to-face time for meeting with Mr. Clark regarding supervision. The calendar entry in each case now indicated that Mr. Clark would be doing "supervision by observation," although he was not meeting personally with Ms. Erickson.

40.     On September 4, 2012, Mr. Laesch advised Amanda Jorgenson ("Ms. Jorgenson"), AA/EEO & Training Chief at Wisconsin DWD HR that Ms. Erickson was on a probation extension and was in serious jeopardy of not passing probation. He informed Ms. Jorgenson that a part of Ms. Erickson's struggle meeting standards was due to a disability. Mr. Laesch asked Ms. Jorgenson if there were any reasonable accommodation that could be made to help her perform the essential functions of her job.

41.     On September 5, 2012, Ms. Erickson learned from Justin Tomer, ("Mr. Tomer") Division of Professional Credentialing, Wisconsin Department of Safety and Professional Services, that supervision experience rules required face-to-face contact, not online or telephone contact. Thus, Ms. Erickson learned that Mr. Clark's new "supervision by observation" procedure did not meet supervision requirements.

42.     In early September 2012, Mr. Clark withdrew as Ms. Erickson's clinical supervisor. Although Ms. Erickson had asked for a different supervisor over a month before, Ms. Noland denied the request. Ms. Erickson had not received another

supervisor and Mr. Clark did not perform in-person supervision of her for some time before he withdrew. Ms. Erickson therefore never received credit for earned client time during weeks where he had not provided face-to-face supervision, which totaled about 90 hours, or about 10% of her training license requirement for face-to-face client time.

43.     In September 2012, Ms. Erickson requested, and Ms. Jorgenson provided, an Employee Accommodation Request form for Ms. Erickson to complete, and a Medical Provider Questionnaire form for Ms. Erickson's doctor to complete.

44.     On September 16, 2012, Ms. Erickson advised Mr. Tomer that she had located a potential clinical supervisor; she asked for verification of whether the individual would qualify, and the process she should follow.

45.     On September 17, 2012, Ms. Jorgenson on behalf of Wisconsin DWD/DVR, notified Ms. Erickson that her probationary period would be extended by three months to December 16, 2012 in order to aid her with accommodations in the work place.

46.     On September 17, 2012, Ms. Erickson acknowledged the extension of her probationary period, and advised that she had another clinical supervisor to replace Mr. Clark; her last record of clinical hours had been provided to Mr. Clark on July 30, 2012. Ms. Erickson was required to pay for her own clinical supervision out-of-pocket, since Ms. Noland declined to provide another clinical supervisor, although one was available whom, Mr. Tomer stated, met the requirements.

47.     Ms. Erickson renewed and updated documentation of her disability beginning in the late summer of 2012.  Sarah R. Kortenkamp, Ph.D. of the Department

11

of Neuropsychology at Marshfield Clinic, drafted Ms. Erickson a "To Whom it May Concern" letter dated September 18, 2012 describing Ms. Erickson's severe right ear hearing loss, coupled with a relative weakness in Ms. Erickson's auditory working memory. Dr. Kortenkamp opined that care should be taken to limit background noise and competing auditory stimuli.  As well, Ms. Erickson would benefit from having as much information as possible presented in a visual format.  Providing her with written directions and policies in addition to those described verbally would maximize Ms. Erickson's efficiency and success, according to Dr. Kortenkamp, particularly in view of Ms. Erickson's high scores on tasks of visual memory, verbal comprehension, perceptual reasoning and visual problem-solving.

48.     Heidi Grosskopf, AuD, of Ministry Medical group drafted a letter dated October 5, 2012, after completing an audiogram/impedance studies report regarding Ms. Erickson's hearing, for use in documenting her need for accommodation. She also indicated the benefit Ms. Erickson would receive from written instructions.

49.     On October 31, 2012, Ms. Jorgenson e-mailed Mr. Greco, Ms. Noland, and other Wisconsin DWD/DVR managers because medical documentation for Ms. Erickson, had been slow in arriving despite Ms. Erickson's diligent efforts to obtain it. Ms. Jorgenson recommended that another three month probationary extension would be needed (a total of six months from Ms. Erickson's original probation end date.)

50.     On November 1, 2012, Ms. Erickson provided Dr. Kortenkamp's and Dr. Grosskopf's documentation, signed the disability accommodations request form and faxed them to Ms. Jorgenson.  Her disabilities were:  (1) Hearing loss, right ear; and (2)

12

weaker auditory processing.  Ms. Erickson requested the following accommodations: (1) Written responses and written direction; (2) audio recordings of information presented, so as to write down information and clarify it by listening again; (3) more time to accomplish tasks.

51.     On November 1, 2012, Jack Lawton, Administrator, Division of Merit Recruitment and Selection, Wisconsin Office of State Employment Relations, approved the request sent him that day by Human Resources Manager, Lynda Hanold, DWD, to extend the probationary period of Ms. Erickson as a Vocational Rehabilitation Counselor with the Wisconsin DWD/DVR for an additional 3 months (to March 16, 2013). The purpose of the extension was to aid her in obtaining accommodations in the workplace that would allow her to perform her job functions satisfactorily and give her additional time to "achieve the knowledge, skills and abilities to competently perform the required tasks for her position.

52.     On November 5, 2012, Ms. Noland began drafting a document on behalf of DVR recommending against extending Ms. Erickson's probation due to "potential liability to DVR as she has shown a lack of professionalism and ethics and has had a negative impact on DVR consumers."

53.     On November 20, 2012, Jo Futrell, Human Resources, Wisconsin DWD, e-mailed Ms. Erickson regarding the status of her disability accommodation:  Ms. Erickson's request for "written responses and written direction" had been approved with modifications.

54.     According to Ms. Futrell's proposal on behalf of Wisconsin DWD, the following accommodations or modification of accommodations requests would be provided to Ms. Erickson:

(1)  Responses and directions for training, work assignments, and expectations would be provided to Ms. Erickson in writing.  For in-office, face-to-face consultations, individuals meeting with Ms. Erickson would enter a case note in the consumer's file to capture the information shared at the consult.  For Team meetings, minute taking would continue to rotate among attendees, but those taking minutes would be asked to follow a standard format with sufficient detail, particularly regarding policy interpretations and procedural discussions.  Written materials would be provided for in-person trainings.  Sample IEPs ("Individualized Plans for Employment") for select disabilities would be provided.

(2) CART ("Communication Access Real Time Translation") Services would be provided for Ms. Erickson's use in staff meetings and trainings.  They would be available in-person for group meetings and trainings, and/or remotely by phone for one-on–one meetings and would yield a transcription for use following the meeting.  These included Dragon Naturally Speaking software and written instructions and either in-person training or a tutorial on how to set up and manage the features of the software.

14

(3) Ms. Erickson's request for audio recording of training information and work directions was denied.  DVR stated its belief that the accommodations in (1) and (2) were the best options available to assist Ms. Erickson in performing the essential functions of her job.

55.    On November 20, 2012, Ms. Erickson thanked Ms. Futrell and stated, "Thank you very much! I believe you captured my concern areas, and areas needed to help me meet expectations. Very appreciative, Elizabeth Erickson"

56.    On November 23, 2012, Ms. Noland updated the document arguing against extending Ms. Erickson's probation that she had begun drafting on November 5, 2012.

57.     On November 27, 2012, Ms. Erickson asked Ms. Jorgenson to provide the status of her accommodations as she was not yet receiving accommodations.  She also wanted to know the status of her probation period which she believed was scheduled to end in December 2012. In this communication, Ms. Erickson additionally documented many supervisory oddities, delays, and delays on case approval caused by Ms. Noland.

58.     On November 29, 2012, Ms. Noland forwarded to Mr. Laesch the final version of her document arguing against extending Ms. Erickson's probation, upon which she had been working since November 5, 2012.

59.    On December 4, 2012, Ms. Futrell advised Ms. Erickson that she had shared the accommodations proposal with Ms. Noland and the Division representatives.  They had some questions which would be addressed in a meeting and then Ms. Futrell would get back to Ms. Erickson.  Ms. Futrell reassured Ms. Erickson

15

that this was part of the flexible interactive process; she anticipated that they would find a compromise that would address Ms. Erickson's needs.

60.     On December 12, 2012, Ms. Erickson rebutted Ms. Noland's 8/15/2012 - 9/20/2012 PIP-GAR allegations.  As well, she reminded Ms. Noland of her two disabilities:  auditory (hearing) disability and auditory processing weakness.

61.     On December 12, 2012, John Haugh (Mr. Haugh"), Acting Director, Bureau of Consumer Services, Wisconsin DWD/DVR, told Ms. Futrell that he had modified the first draft accommodation by removing the reference to assistance with note taking. He commented, "other accommodations look reasonable." The language he removed had read, "Case consults: for in-office, face-to-face consultations, those meeting with Elizabeth will enter a case note in the individual consumer's file to capture the information shared at the consult." He did not provide a reason for his deletion.

62.     On December 13, 2012, Mr. Greco, Division Administrator, signed Ms. Erickson's accommodation memo, as modified by Mr. Haugh.  No one communicated with Ms. Erickson before finalizing her accommodation to determine if the modified accommodation would be effective for her, nor to determine whether she had any alternatives to suggest to the portions that were denied.

63.     Also on December 13, 2012, Ms. Jorgenson wrote an e-mail to Ms. Erickson extending her probation for another two months, to February 15, 2013 (not the three months that Ms. Hanold, as DVR Human Resources manager had originally requested, and Mr. Lawton of OSER had approved.)

16

64.     The letter enclosed with the e-mail explained,

> This extension was obtained to aid you with accommodations in the
> workplace that will allow you to perform the job functions of a
> Vocational Rehabilitation Counselor satisfactorily and give you
> additional time to achieve the knowledge, skills and abilities to
> competently perform the required tasks for your position.
>
> Your probationary period which was scheduled to end December 16,
> 2012, and will now be extended to February 15, 2013. However, please be
> aware that you will need to make significant performance improvements
> during this time period, or your probation may end prior to February 15,
> 2013.

Amanda L. Jorgenson, AA/EEO Program Chief, Human Resources Services Bureau,
Administrative Services Division, Department of Workforce Development.  Letter to
Elizabeth Erickson, 12/13/2012.

65.     The administrator had the discretion to grant up to a one-year

probationary period extension of time under Wis. Stat. 230.28(1)(bm), but it granted Ms.

Erickson only a two-month extension of time during which to receive accommodations

and improve her work performance.

66.     Ms. Erickson responded to Ms. Jorgenson on December 13, 2012, asking,

among other things, if she would have advance notice of GAR expectations, and

whether accommodations would be in place.

67.     On December 17, 2012, Ms. Erickson rebutted a list of work concerns that

Ms. Noland had provided to her on or about November 30, 2012.  All of these concerns

on Ms. Noland's part discussed events before the Wisconsin DWD/DVR's

determination on December 13, 2012 to provide a disability accommodation to Ms.

Erickson.

68.     On or about January 3, 2013, Ms. Noland recorded that a copy of Ms. Erickson's signed disability accommodations had been provided to Ms. Erickson from Wisconsin DWD/DVR. Ms. Erickson received this copy of the signed accommodation on or about January 5, 2013.

69.     On January 4, 2013, Ms. Erickson received an e-mail with instructions on how to use CART services (services that were to be provided as one of her disability accommodations). However, she used CART services only one time prior to the ending of her employment, primarily because Ms. Noland canceled, changed, or failed to provide notice on time for meetings at which she could have used CART services prior to Ms. Erickson's termination. One meeting on fiscal occurred during which participants had, on paper in front of them, the information that was presented. CART services were unnecessary in that one instance.

70.     During January 2013, Ms. Erickson had no opportunity to use her approved accommodations to improve her work performance. In fact, for the period July 2012 through and including February 14, 2013, the date of her termination, Ms. Erickson received none of the other approved workplace accommodations to aid her work performance, other than one CART service on February 13, 2013.

71.     On January 31, 2013, after hours, Ms. Noland sent Ms. Erickson a Final GAR review meeting summary for the probationary period August 15, 2012 – January 31, 2013.  The GAR stated that Ms. Erickson had failed to meet job requirements in every one of the five areas of assessment.   This conclusion contrasted with Mr. Clark's assessment on July 18, 2012 that Ms. Erickson had met all but two of 25 areas, and also

18

with Ms. Noland's assessment on August 7, 2012 that her evaluations had met standards. This Final GAR reported on a period of time when Ms. Erickson was not provided with accommodations to aid her work performance. Ms. Noland's GAR also covered 18 months in which she negatively re-evaluated or re-wrote Mr. Clark's evaluations.

72.     On February 13, 2013, Ms. Erickson drove with co-workers to an out-of-office work meeting, leaving at about 7:30 a.m. Because of the early hour, she did not see her notice of a pre-termination meeting that the employer had sent.  She learned of the meeting only late in the day on February 13, 2013 when she encountered Ms. Noland. Ms. Erickson handed her the rebuttal that she had prepared to the GAR provided to her on January 31, 2013.  Ms. Noland then verbally told Ms. Erickson of the pre-termination meeting. Ms. Erickson called Mr. Laesch to advise him that she had not received notice and objected to it going forward. However, he responded that it was too late, she should have checked her e-mail.

73.     Aimee Jahnke, a Wisconsin DWD/DVR supervisor from the DVR Green Bay office, led Ms. Erickson's pre-termination meeting on February 14, 2013 at 8:00 a.m. Present were Tom Younger from the Job Center, Ms. Jahnke, Ms. Soulier-Ramsey as Ms. Erickson's representative, and Ms. Erickson.  Ms. Jahnke read from a paper.  She asked Ms. Erickson to inform her of any mitigating circumstances, but only those that had occurred since 4:40 p.m. the prior day, February 13, 2013. Ms. Erickson and Ms. Soulier-Ramsey clarified that was all that Ms. Erickson could talk about. Ms. Erickson was not

provided any accommodations for the pre-termination meeting. The meeting took less than fifteen minutes.

74.     At 8:15 a.m., Ms. Erickson e-mailed Division Administrator Mr. Greco stating that she had not been provided disability accommodations for the meeting that had just ended, and that the GARs leading up to the February 14 meeting had been unjust and fraudulent. She looked forward to his investigation. He did not respond.

75.     Division Administrator Mr. Greco and Bureau Director John Haugh signed a letter dated February 14, 2013 terminating Ms. Ericson from her probationary employment with the Wisconsin DWD/DVR effective immediately because her job performance did not meet the required standards that must be met for the position. The letter encouraged her, though, to reapply for DVR employment.

76.     Ms. Noland arrived following the meeting on February 14, while Ms. Erickson was working, and asked her to leave the workplace without finishing the work she was then performing. Ms. Erickson complied after sorting the materials she had been working on to enable follow-up by others, and then gathered her personal possessions and removed them. She then left the workplace.

**First Claim for Relief**
**VIOLATIONS OF SEC. 504 OF THE REHABILITATION ACT OF 1973,**
**29 U.S.C. § 794, *Et Seq.***

77.     Erickson re-alleges the facts in paragraphs 1 through 76 above as if fully alleged herein.

78. The Wisconsin DWD-DVR intentionally discriminated against Ms. Erickson in the terms and conditions of her employment with the Wisconsin DWD-DVR as described above;

79. The Wisconsin DWD-DVR intentionally failed to provide reasonable accommodations to Ms. Erickson for her known disabilities; and

80. The Wisconsin DWD-DVR intentionally terminated Ms. Erickson from employment because of her disabilities.

81. Ms. Erickson has been damaged by Wisconsin DWD/DVR's intentional violations of § 504 of the Rehabilitation Act inasmuch as Ms. Erickson:

(a)  Has lost her Counselor-in-Training employment since February 14, 2013 with resulting pecuniary losses;

(b) Has limited and compromised her pension benefits available through the State of Wisconsin Department of Employee Trust Funds and may have prevented her from achieving a viable retirement income.

(c)  Has limited or rendered impossible her ability to pursue her DVR career goal of pursuing a full-time vocational counseling career due to Mr. Clark withholding and not crediting her face-to-face counselor-in-training hours and completing her Counselor-in-Training Program; and

(d) These violations are ongoing.

**Second Claim for Relief:**
**VIOLATION OF 42 U.S.C. § 1983 ("§ 1983") BY DEFFENDANTS GRECO, LAESCH,**
**HAUGH, AND NOLAND, EACH IN THEIR OFFICIAL CAPACITIES WITH THE**
**STATE OF WISCONSIN DWD-DVR AND UNDER COLOR OF STATE LAW.**

82.     Ms. Erickson realleges paragraphs 1 through 81 above as if fully alleged

herein.

83.     All actions of officials Greco, Laesch, Haugh, and Noland, who are

employed by the State of Wisconsin DWD-DVR were taken under color of state law.

They are sued in their official capacity.

84.     Defendant State officials failed to follow  the  requirements of § 504 of the

Rehabilitation Act and the ADAAA to accommodate employees with disabilities  such

as Ms. Erickson, failed to adequately train, educate, and supervise managers and

officials responsible for daily operation of its agencies, and specifically failed to monitor

the process for identifying and implementing disability accommodations, to ensure that

qualified employees such as Ms. Erickson with disabilities had an opportunity to work

with the assistance of disability accommodations.

85.     Defendants Greco, Laesch, Haugh, and Noland engaged in discriminatory

practices in their official capacity with malice or reckless and deliberate indifference to

Ms. Erickson's federally-protected right to be free from employment discrimination

based upon her actual disability, her perceived disability, and her record of disability in

violation of the sec. 504 of the Rehabilitation Act and § 1983 and the ADAAA.

86.     As a result of the actions in discriminating against her and failing to

accommodate her, Ms. Erickson has lost her employment position, has been unable to

complete training in her chosen field, and has been wrongfully deprived of the ability to complete the face-to-face supervision requirements for licensure in her chosen field, all in violation of sec. 504 of the Rehabilitation Act, the ADAAA and § 1983.

87.     As a result of the Defendants Greco, Laesch, Haugh, and Noland's actions engaging in discrimination forbidden by federal statutes, Ms. Erickson has suffered irreparable harm in the loss of her prospective career.

88.     As officials of the State of Wisconsin, DWD-DVR, all of the actions of Mr. Greco, Mr. Laesch, Mr. Haugh, and Ms Noland regarding Ms. Erickson, including but not limited to all actions related to her disabilities, her employment performance and their evaluation of that performance, her qualifications for licensure and for employment, and her ability to obtain a disability accommodation and additional training to assist her with her employment, were actions taken under color of state law in violation of federal statutes.

89.      Defendants Greco, Laesch, Haugh and Noland in their official capacities engaged in discrimination with malice or reckless and deliberate indifference to Ms. Erickson's federally-protected right to be free from employment discrimination based upon her disabilities, her perceived disabilities, and her record of disabilities, all in violation of § 504 of the Rehabilitation Act and the substantive provisions of the ADAAA, and in violation of 42 U.S.C. § 1983.

90.     As a result of the official actions of Mr. Greco, Mr. Laesch, Mr. Haugh, and Ms. Noland, Ms. Erickson has suffered irreparable harm in that she has lost her employment position, has been unable to complete training in her chosen field, and has

23

been wrongfully deprived of the ability to complete the face-to-face supervision requirements for licensure in her chosen field, all in violation of § 504 of the Rehabilitation Act, the substantive provisions of the ADAAA, and in violation of 42 U.S.C. § 1983.

## CLAIM FOR RELIEF

Pursuant to the first cause of action under § 504 of the Rehabilitation Act:

    A.  Declare that Ms. Erickson's rights under Section 504 of the Rehabilitation Act and substantive portions of the ADAAA were violated;

    B.  Enjoin the Defendants from any engaging in any further prohibited discrimination against Ms. Erickson.

    C.  Provide any other remedies allowed under § 504 of the Rehabilitation Act to compensate Ms. Erickson for lost back pay and to assist with future costs necessary and incidental to implement the equitable remedies described above, including travel and housing costs if the remedies cannot be completed at DVR locations within reasonable commuting distance from her home.

    D.  Provide Attorney's fees, litigation expenses, and costs incurred in obtaining relief and pursuing this action.

    E.  Any other equitable relief the court deems just and proper.

Pursuant to the second cause of action under 42 U.S.C. § 1983:

A.  Order Restoration of Ms. Erickson to her position as a VR Counselor-in-Training with recognition of time served and completed face-to-face hours acknowledged in writing as completed. If face-to-face hours cannot be verified or documented, provide a reasonable opportunity to earn them a second time.

B.  Order an extension of time for Ms. Erickson to learn and understand the material, and to obtain the required skills, including opportunities to ask questions or request assistance if necessary.

C.  Order correction of Ms. Erickson's employment record including removal of false and discriminatory allegations in GARs, PIPs, or any other evaluatory tools containing erroneous statements;

D.  Order any other opportunities for Ms. Erickson to enable her to continue and complete the VR Counselor-in-Training program.

E.   Order implementation of reasonable accommodations for Ms. Erickson's disabilities. Said reasonable accommodations shall be selected and agreed during a flexible interactive process. Said reasonable accommodations shall be agreed to be effective for Ms. Erickson and shall be implemented and available from the start of her return to work.

F.  Order that supervision for Ms. Erickson be provided by individuals who are trained in EEO law, and in the substantive requirements of the

ADAAA and who are individuals who did not participate in the events complained of in this litigation.

Pursuant to both causes of action:

   A.  Provide Attorney's fees, litigation expenses, and costs incurred in obtaining relief and pursuing this action.

   B.  Any other equitable relief the court deems just and proper.

Dated this 28th day of May, 2015.

CULLEN WESTON PINES & BACH LLP


*/s/Linda L. Harfst*
Lester A. Pines, SBN 1016543
Linda L. Harfst, SBN 1020761
Attorneys for Plaintiff

<u>Mailing Address</u>

122 West Washington Avenue
Suite 900
Madison, Wisconsin 53703
(608) 251-0101 (telephone)
(608) 251-2883 (facsimile)
pines@cwpb.com
harfst@cwpb.com

26