IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELIZABETH A. ERICKSON,

                  Plaintiff,                          OPINION AND ORDER

     v.

                                            15-cv-320-wmc

DEPARTMENT OF WORKFORCE
DEVELOPMENT, DIVISION OF
VOCATIONAL REHABILITATION OF
THE STATE OF WISCONSIN, MICHAEL
GRECO, JOHN HAUGH, and PATRICIA
NOLAND,

                  Defendants.

---

      Plaintiff Elizabeth Erickson brings claims for disability discrimination and failure to accommodate under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*, the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA" or "ADA"), 42 U.S.C. § 12101, *et seq*.  After the court denied defendants' motion for summary judgment (dkt. #72), the case proceeded to a bench trial (dkt. #79).  On the third day of trial, following the close of all testimony and other evidence relevant to a determination of liability, the court held that Erickson had failed to prove a required element of both of her claims -- that she was otherwise qualified to perform the essential functions of a counselor-in-training position even with accommodations.  For reasons stated on the record, I found in favor of defendants and issue this opinion and order to elaborate on my findings and reasoning.

OPINION

Plaintiff Erickson's discrimination and failure-to-accommodate claims both require a showing that she is a qualified individual with a disability. *See Felix v. Wis. Dep't of Transp.*, 828 F.3d 560, 568 (7th Cir. 2016) (describing elements for a discrimination termination claim under the Rehabilitation Act); *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) (setting forth elements for a failure to accommodate claim under the ADA). This requirement has two elements: (1) that she is disabled within the meaning of those statutes; and (2) that she was able to perform the essential functions of her job either with or without an accommodation. As for the first element, this court credited Erickson's testimony, as well as that of her expert Connie Nadler and the medical report of Dr. Kortenkamp, establishing her profound, long-standing hearing loss in her right ear and tinnitus, which can hinder her ability to communicate effectively, although she has largely overcome the former through raw intelligence and development of other communication skills. The court further credits Nadler's expert opinion testimony that Erickson has an auditory working memory weakness, except to the extent inconsistent with the medical diagnosis offered by Dr. Kortenkamp.

Erickson's proof, however, faltered on the second element -- that she was otherwise qualified to perform the job of counselor-in-training. This element has its own two-step test. First, courts are to "consider whether the individual satisfies the perquisites for the position, such as possessing the appropriate education background, employment, experience, skills, licenses, etc." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 (7th Cir. 2015). At trial, the defendants did not meaningfully dispute that

Erickson satisfied the prerequisites of a counselor-in-training position. Furthermore, the court found her to be credible, engaging, clearly bright, and likely to be highly successful in any number of jobs.

Having found the first step satisfied, the court considers the second: whether Erickson "can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.* Defendants established that the essential functions of the counselor-in-training position included: (1) assessing her customers' eligibility for assistance; (2) drafting appropriate Individual Plans for Employment ("IPE"); and (3) successfully closing a reasonable number of her cases. Through the testimony of John Clark and others, defendants credibly documented legitimate concerns regarding Erickson's performance as to each of these core functions: (1) failure to assess and determine eligibility timely; (2) difficulty in developing effective IPEs based on an accurate assessment of a consumer's strengths and weaknesses; and (3) most importantly, an inability to move consumers to a successful placement (i.e., successfully "close cases").

Accordingly, the dispositive questions at trial were: (1) whether Erickson's disability contributed to these performance concerns; and (2) if so, would accommodations have allowed her to perform the job successfully. The evidence to the first question again fell in Erickson's favor, since her disability may very well have interfered with her ability to communicate effectively with consumers, particularly in group settings or with substantial background noise. Interference with plaintiff's ability to communicate with her clients obviously would touch on all three of Erickson's core job functions: assessing eligibility, drafting an IPE and moving the case to closure.

Still, Erickson neither sought nor established a need for an accommodation to address any difficulty with respect to one-on-one communication with her clients. To the contrary, she testified that she could effectively self-compensate for any difficulty in hearing or processing in those situations by shutting her office door.[1] Moreover, Erickson does not contend that the planned accommodations offered by defendants were inadequate once her disability became known; rather, her complaint was that the accommodations were not actually implemented and, even if implemented, were not in place for a sufficient period of time to allow for them to work. Both are strong points, even discounting for the fact that Erickson was so good at compensating for her hearing loss that none of the supervisory or other staff picked up on it.[2]

By the time the need for some accommodations were addressed, however, Erickson had already demonstrated an inability to assess her own customer's needs based on their skills and limitations, to develop a plan to pursue viable work, and ultimately to succeed. While Nadler opined in conclusory fashion in her expert report and at trial that some of these failures may have been due to Erickson's own disabilities, the

---

[1] One of plaintiff's experts, Nadler, did opine that other hindrances in Erickson's own office may have interfered with her ability to overcome her hearing/processing disability, even in one-on-one client interacting with her door closed, including fan and hallway noises. There are at least two problems with Nadler's opinion. First, Erickson herself didn't buy it, choosing not to use hearing or processing aids, like real-time transcription, when dealing with clients in her office. Second, she had good reasons to feel confident in that setting, particularly given her demonstrated ability to compensate effectively with other techniques. Regardless, plaintiff failed to establish by a preponderance of the evidence that Erickson's failures to meet core competencies for a counselor-in-training position was due to her disability with or without accommodation, rather than other factors.

[2] This was, of course, a great irony given that all of the DWD staff were trained to draw out, detect and address disabilities in their customers, and Erickson had been one of those customers.

preponderance of the evidence suggests it was due to other factors, most likely involving a lack of discernment of her clients' limitations and the practicalities of their individual, ongoing plans to obtain long-term employment.

Ignoring any problems with her one-on-one conversations with consumers, Erickson raised concerns about her training and instructions, or lack thereof. Obviously, if she were solely provided oral instructions on how to discern a customer's need, draft an IPE or successfully advance a case to closure, then Erickson might have a credible claim that her disability contributed to her performance issues. The evidence at trial did not support that claim, however, since Erickson had access to ample written training materials, guides and manuals on these topics as well. Perhaps Erickson missed the full benefit of certain training sessions, but she provided no evidence that greater access to and understanding of those oral presentations would have meaningfully turned her performance deficiencies around. At the very least, Erickson failed to demonstrate by a preponderance of the evidence that any of the suggested accommodations would have made her qualified for the position of counselor-in-training, much less a full blown counselor.

Instead, Erickson's proof focused on her interactions with Patricia Noland, Erickson's supervisor, after her ongoing performance issues came to a head in August 2012. Plaintiff credibly testified that her subsequent lengthy, one-on-one oral training sessions with Noland were difficult for Erickson, both because of her disability *and* because the time spent with Noland, as well as the additional tasks Noland assigned her, served mainly to distract Erickson from performing her core functions. No doubt,

5

Erickson's disability contributed to those sessions proving unsuccessful, as did an apparent personality clash, but they do not support a finding that her disability contributed to her longstanding performance concerns, particularly the fact that only a few of her client files were ever successfully closed.

Erickson rightly points out that defendants agreed to craft an accommodation for her disability, yet her direct supervisor, Noland, did not believe that the accommodations would further Erickson's chances of meeting performance expectations. (Indeed, Noland obviously viewed Erickson claim of a disability only after both Clark and she were repeatedly critical of Erickson's job performance as a transparent attempt to save her job, an attitude that surely made their ongoing training sessions even less likely to succeed.)

Admittedly, the question as to whether Erickson could meet the requirements of her job with accommodations remained a close one at trial, all the more so because of the Division's schizophrenic response to Erickson's request for an accommodation. Still, Erickson failed to demonstrate that it was more probable than not that an accommodation would have remedied defendants' legitimate performance concerns. On the contrary, for reasons already discussed, the court found from the evidence received at trial that it was likely Erickson's disability played a small role, if any, in her apparent inability to meet the core functions of her position -- determining eligibility, drafting a sufficient number of adequate IPEs and advancing her cases to a successful close.

While the court, therefore, found that Erickson failed to prove she was otherwise qualified for the position of counselor-in-training, it would be remiss not to point out that defendants' handling of Erickson's request for accommodation, and then abrupt

termination, was abysmal. As the court found at the end of trial, defendants' crafting of an accommodation by the central office's HR department was *deliberately* divorced from meaningful involvement by Erickson's actual supervisors, apparently in an ill-advised attempt to ensure a dispassionate assessment of her needs, which instead insured that the accommodations would make little practical impact on Erickson's job performance. Moreover, in terminating Erickson's employment some six weeks after the accommodations were put in place, the Division further underscored the hollowness of the entire accommodation process.

As a result, the defendants' *only* viable defense at trial was to hope Erickson could not prove that she was otherwise qualified to fulfill the position. While that gamble worked out in their favor in this case, if barely, defendants may well want to reconsider how it approaches requests for accommodations like this going forward, both as to who should participate in developing meaningful accommodations *and* giving them time to take root. Stating the obvious, one would expect the Division of Vocational Rehabilitation for the Wisconsin Department of Workforce Development to do more to comply with the requirements of the ADA and Rehabilitation Act than virtually *any* other employer, *especially* when it was dealing with one of its own, former customers, rather than strictly adhering to the letter of the law.

ORDER

IT IS ORDERED that:

1) Plaintiff failed to demonstrate her claims under the ADA and Rehabilitation Act by a preponderance of the evidence.

2) The clerk of court is directed to enter judgement in favor of defendants.

Entered this 13th day of December, 2016.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge